# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **WILLIAM R. CHATMAN, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 3:11-cv-652 |
| ) | |
| **METROPOLITAN GOVERNMENT OF** ) | Judge Trauger |
| **NASHVILLE & DAVIDSON COUNTY and** ) | |
| **CORRECT CARE SOLUTIONS,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

Plaintiff William R. Chatman is an inmate at the West Tennessee State Penitentiary under the supervision of the Tennessee Department of Corrections. He was housed at the Davidson County Criminal Justice Center in Nashville at the time he filed this *pro se* action under 42 U.S.C. § 1983 seeking compensatory damages against defendants the Metropolitan Government of Nashville and Davidson County ("Metro") and Correct Care Solutions. (ECF No. 1.) The plaintiff has also submitted an application to proceed *in forma pauperis*. (ECF No. 2.)

**I.     Application to Proceed *in Forma Pauperis***

It appears from the plaintiff's application that he lacks sufficient financial resources to pay the full filing fee in advance. The application is therefore **GRANTED**, and the Clerk of Court is **DIRECTED** to file the complaint *in forma pauperis*, 28 U.S.C. §§ 1915(a), (b)(4).

The plaintiff is nonetheless assessed the full $350.00 civil filing fee. 28 U.S.C. § 1915(b)(1). The custodian of the plaintiff's inmate trust fund account at the institution where he now resides is directed to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to the plaintiff's inmate trust account; or (b) 20% of the average monthly balance in the plaintiff's inmate trust fund account for the six-month period immediately preceding the filing of the complaint. *Id.* Thereafter, the custodian shall submit 20% of the plaintiff's preceding monthly income (or income credited to the plaintiff's trust account for the preceding month), but only when the plaintiff's monthly income exceeds $10.00. 28 U.S.C. § 1915(b)(2). Payments shall continue until the $350.00 filing fee has been paid in full to the Clerk

of Court. *Id.*

**II.     PLRA Screening of Plaintiff's Complaint**

Under the Prison Litigation Reform Act (PLRA), the courts are required to conduct an initial screening of a prisoner's civil complaint if it is filed *in forma pauperis* or if it seeks redress from a governmental entity or official, and to dismiss the complaint if it is determined to be frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must construe the plaintiff's *pro se* complaint liberally, *Boag v. McDougall*, 454 U.S. 364, 365 (1982), and accept the plaintiff's allegations as true unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

The plaintiff here alleges that, at the time he filed his complaint, he was a pretrial detainee housed at the Davidson County Criminal Justice Center. He is diabetic and has high blood pressure. He went to the medical clinic operated at the Criminal Justice Center by Correct Care Solutions to request access to medications already prescribed to him for those conditions. The clinic staff repeatedly refused to allow him access to those medications. Ultimately, allegedly as a result of being deprived of his medications, the plaintiff suffered a stroke and was taken to Centennial Hospital for treatment. He was told there that the cause of his stroke was that he had not been taking his prescribed blood-pressure medication. The plaintiff alleges that the medical staff of Correct Care Solutions was deliberately indifferent to his serious medical needs. Further, he vaguely alleges that Metro is liable to him for having contracted with an inadequate health-care provider and thereby violated his constitutional rights.

To bring a successful claim under 42 U.S.C. § 1983, a plaintiff must establish "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001). For purposes of the PLRA screening requirement, the plaintiff here has adequately alleged facts that show the deprivation of a federal right, as the Sixth Circuit has repeatedly recognized that the failure to provide medical care may violate the Eighth Amendment. *See, e.g.*, *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) ("The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain on prisoners by acting with deliberate indifference to prisoners' serious medical needs. Failure to provide medical care may rise to the level of a violation of the Cruel and

Unusual Punishments Clause of the Eighth Amendment where objective and subjective requirements are met." (internal quotation marks and citations omitted)).

The question is whether the plaintiff has adequately alleged that a "person" "acting under color of state law" was responsible for the alleged violation of his rights.

    **a.    The Claim against Metro**

With respect to the claim against Metro, although a municipality may be a "person" for purposes of § 1983, the law is clear that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior*[1] theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Rather, "the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for the deprivation of rights protected by the Constitution." *Monell*, 436 U.S. at 690. "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80 (1986) (emphasis in original)).

Thus, a municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty.*, 989 F.2d 885, 889 (6th Cir. 1993). In short, the Sixth Circuit has held that the plaintiff must "identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363–64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312 (1981) (citation omitted)); *Bd.*

---

[1] *"Respondeat superior"* is "the doctrine under which liability is imposed upon an employer for the acts of his employees committed in the course and scope of their employment." Ballentine's Law Dictionary (3d ed. 1969).

of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (indicating that the plaintiff must demonstrate "deliberate conduct").

In the present complaint, the plaintiff does not remotely allege the existence of any type of official Metro policy that led to the injuries allegedly suffered by the plaintiff, or even that Metro was aware of the actions taken by the clinic and the clinic employees. Because the plaintiff has failed to identify an individual at Metro who was directly responsible or involved at all in the events leading to the plaintiff's alleged injuries, and because he has not alleged the existence of a Metro policy that gave rise to his injuries, the claims against Metro are subject to dismissal without prejudice.

### b.     The Claims against Correct Care Solutions

Generally speaking, a § 1983 claim will not lie against a non-governmental actor. Notwithstanding, the Supreme Court has held that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *West v. Atkins*, 487 U.S. 42, 56 (1988). In *West*, the Court concluded that a physician to whom the State had contractually delegated its affirmative obligation to provide adequate medical care to prisoners was a state actor who could be held liable under § 1983. *Id.* Similarly, in the present case, the clinic to which the obligation to provide medical care to individuals in state custody has been contractually delegated may be held liable under § 1983.

The plaintiff must still, however, leap the *respondeat superior* hurdle to show that the clinic itself should be liable on the basis of its *own* actions and not on the basis of its employees' actions. Again, as set forth above, "[r]*espondeat superior* is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir.2006). This means that "liability under § 1983 must be based on active unconstitutional behavior." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). An employer's "awareness of allegations of unconstitutional conduct and failure to act are not a basis for liability." *McCurtis v. Wood*, 76 F. App'x 632, 634 (6th Cir. 2003).

As stated above, *pro se* complaints are to be construed liberally. *Boag v. McDougall*, 454 U.S. 364, 365 (1982). The present complaint, construed liberally, may at this stage be read to allege the existence of corporate policies discouraging the dispensation of necessary medications, and that the various employees

were complying with such policy when denying the plaintiff his medication. The Court will conclude on that basis that, for purposes of the required screening, the complaint states a claim against Correct Care Solutions that is not facially invalid or frivolous.

The plaintiff is nonetheless put on notice that he should promptly **amend his complaint** to more clearly identify the policy adopted by Correct Care Solutions that led to his injuries, and to add as defendants the **individual employees** of Correct Care Solutions who were **actively involved** in the alleged deprivation of his rights.

### III.     CONCLUSION

Because the plaintiff fails to state a claim against Metro for which relief may be granted, the claims against Metro are hereby **DISMISSED WITHOUT PREJUDICE**.

Because the plaintiff's claims against Correct Care Solutions are not facially frivolous, the claim against it may proceed. Before process is issued, however, the plaintiff **SHALL** amend his complaint as directed and shall file the amended complaint within **twenty days** of entry of this order on the docket. The plaintiff is forewarned that failure to comply with this order within the time prescribed could jeopardize his prosecution of this action.

The Clerk of Court is **DIRECTED** to send a copy of this order to the Warden of the West Tennessee State Penitentiary to ensure that the custodian of the plaintiff's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. Should the plaintiff be transferred from his present place of confinement, the custodian of his inmate trust fund account shall ensure that a copy of this order follows the plaintiff to his new place of confinement. All payments made pursuant to this order shall be forwarded to the Clerk of Court for the Middle District of Tennessee.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge