UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM R. CHATMAN, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | Case No. 3:11-cv-00652 |
| v. ) | Judge Aleta A. Trauger |
| ) | |
| KIERSTEN CRABTREE, in her individual ) | |
| capacity; and PING MENG, in her individual ) | |
| capacity, ) | |
| ) | |
|     Defendants. ) | |

## MEMORANDUM & ORDER

Defendants Kiersten Crabtree and Ping Meng have jointly filed a Motion for Summary Judgment (Docket No. 73), to which the plaintiff, William F. Chatman, has not responded.[1] For the reasons stated herein, the motion will be granted.

---

[1] Chatman originally filed this lawsuit *pro se*. (*See* Docket No. 1.) On September 12, 2011, counsel entered an appearance on Chatman's behalf. (Docket No. 19.) After Crabtree and Meng filed the instant Motion for Summary Judgment, the parties filed a Joint Motion to Continue Trial, representing that Chatman's counsel had been hospitalized for unspecified serious health issues. (Docket No. 76.) The court granted the motion and, pursuant to Chatman's request for relief, granted Chatman until December 2, 2013 to respond to the pending Rule 56 motion. (Docket No. 77.) Chatman did not file any response by that date. On January 7, 2014, the court ordered the parties to file a status report concerning the status of Chatman's representation and the filing of a response to the pending motion. (Docket No. 78.) On January 17, 2014, counsel for defendants informed the court that Chatman's attorney was not currently practicing law and that the attorney's law firm no longer represented Chatman. (Docket No. 79.) On January 21, 2014, the court ordered Chapman to retain new counsel or file a notice that he would be representing himself. (Docket No. 80.) The court specifically forewarned Chatman that "failure by the plaintiff to either have new counsel enter an appearance of record or file a notice that he will be representing himself could well result in the granting of this summary judgment motion in favor of the defendants and the dismissal of this case. (*Id.*) The court ordered the Clerk to mail a copy of its January 21, 2014 Order directly to Chatman at his home address by certified mail, return receipt requested. (*Id.*) Despite receiving a copy of that Order at his home address (*see* Docket Nos. 81 and 82), Chatman made no response to the Order.

1

# BACKGROUND

## I. Procedural History

Correct Care Solutions ("CCS") provides medical care for inmates at the Davidson County Justice Center ("CJC"). In his Amended Complaint (Docket No. 29), Chatman alleges that, while he was housed at the CJC in March 2011, CCS Registered Nurse ("RN") Kiersten Crabtree and Licensed Practical Nurse ("LPN") Meng violated his constitutional rights by failing to provide him appropriate medication and monitoring for his hypertension and diabetes.[2]

RN Crabtree and LPN Meng argue that they are entitled to summary judgment on Chatman's claims on either of two grounds: (1) Chatman failed to exhaust his administrative remedies before filing suit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e)(a); and/or (2) even if the court were to consider Chatman's claims on the merits, Chatman cannot demonstrate that he had a "serious medical need" and/or that RN Crabtree or LPN Meng acted with "deliberate indifference" to any serious medical need, as required to prove his claims under 42 U.S.C. § 1983.[3]

## II. Unopposed Summary Judgment Standard

---

[2] In his Amended Complaint, Chatman also sued LPN Susan Howell and Licensed Physician Daniel Miller. After LPN Howell filed a Suggestion of Bankruptcy (Docket No. 50), the court stayed the case only as it related to Howell (Docket No. 51). The parties also stipulated to the dismissal with prejudice of all claims against Miller. (Docket No. 58).

[3] In support of their motion, Crabtree and Meng have filed (1) a Memorandum of Law (Docket No. 74), (2) a Statement of Undisputed Material Facts ("SUMF") consistent with the Federal Rules of Civil Procedure and applicable Local Rules of the United States District Court for the Middle District of Tennessee (Docket No. 75); and (3) evidentiary materials, including (a) the Affidavit of Tony Wilkes (Docket No. 73, Ex. 1), (b) the Affidavit of Trish Young (*id.*, Ex. 2), (c) excerpts from the deposition of Kiersten Crabtree (*id.*, Ex. 3), (d) excerpts from the deposition of Daniel Miller (*id.*, Ex. 4), and (e) excerpts from the deposition of William Chatman (*id.*, Ex. 5).

2

The court may not grant summary judgment simply on the basis that the adverse party has failed to respond. The court must review the motion and determine whether the movant has carried its burden to establish the absence of a genuine issue as to every material fact. *Stough v. Mayville Cmty. Schs.*, 138 F.3d 612, 614 (6th Cir. 1998). Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2013). At the summary judgment stage, the moving party bears the initial burden of identifying those parts of the record that demonstrate the absence of any genuine issue of material fact. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). However, if the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may meet its burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* (citing *Celotex*, 477 U.S. at 325). "When the moving party has carried this burden, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).) The non-moving party also may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. *Id.*

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Moldowan*, 578 F.3d at 374 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.

3

Ed. 2d 202 (1986)). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the nonmoving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita*, 475 U.S. at 587). But "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient," *Moldowan*, 578 F.3d at 374 (quoting *Anderson*, 477 U.S. at 252), and the non-movant's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249. An issue of fact is "genuine" only if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Matsushita*, 475 U.S. at 587).

With respect to the issue of exhaustion of administrative remedies, under the PLRA, on which the defendants have the burden of persuasion here, the "initial summary judgment burden is higher in that [the defendants] must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (internal quotation omitted); *see also Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) ("Summary judgment is appropriate only if defendants establish the absence of 'a genuine dispute as to any material fact' regarding non-exhaustion.") (quoting Fed. R. Civ. P. 56(a)).

Finally, under Local Rule 56.01(g), Chatman's failure to respond to the defendants' SUMF indicates that "the asserted facts are not disputed for the purposes of summary judgment." *See Deutsche Bank Nat'l Trust Co. v. Tibbs*, 2014 WL 280365, at *2 (M.D. Tenn. Jan. 24, 2014) (applying Rule 56.01(g)); *Head v. Town of Gainesboro, Tenn.*, 2013 WL 4780080, at *1 (M.D. Tenn. Sept. 5, 2014); *see also* Fed. R. Civ. 56(e)(2) (where a party "fails to properly address another party's assertion of fact . . . , the court may consider the fact undisputed for purposes of

4

the motion.").

## III. Background Facts Related to Exhaustion

Chatman was brought to the CJC on March 7, 2011. The CJC grievance policy is set forth in an "inmate handbook" provided to all inmates at the outset of their incarceration at the CJC. The policy states, in plain English, that prisoners may file a grievance within ten days of an incident at issue, after which the facility "should" provide an answer within seven working days. After receiving an initial determination, "[i]f you think the answer to your grievance is unfair, you can appeal to the facility administrator. You must file your appeal within one week of receiving your original response." (*See* Wilkes Aff., Ex. B.) Chatman received a copy of this policy during his intake at the CJC.

On March 7, 2011, RN Crabtree performed an initial medical screening of Chatman, in which Chatman indicated that he suffered from diabetes. Although the screening form does not indicate that Chatman actually informed RN Crabtree about hypertension, RN Crabtree independently observed that Chatman's blood pressure was elevated and, therefore, initiated an "Intake Nursing Intervention" for hypertension. Under established protocols, CCS generated a medication release form, Chatman's vital signs were checked twice a week for two weeks, and Chatman was referred to a health care provider for a chart review following the two-week vital sign check. Over the next two weeks, with respect to his diabetes treatment, Chatman repeatedly refused to permit CCS employees to administer his insulin,[4] and CCS employees advised him that refusing the insulin could lead to a worsening of his medical conditions or death.

On March 14, 2011, Chatman informed a CCS employee that he had a history of

---

[4]Chatman accepted insulin on some occasions but denied it on others.

5

hypertension, but the medical records do not indicate that Chatman complained at that time about not receiving blood pressure medication. Chatman submitted a "Sick Call Request" that CCS reviewed on March 17, 2011, in which he complained to CCS that he had not received blood pressure medicine. On March 18, the on-duty nurse examined Chatman, noting that his blood pressure was below the thresholds for "elevated" blood pressure. With respect to his potential hypertension, CCS employees took his blood pressure on March 7, but on March 10 Chatman refused treatment, and on March 11, Chatman's blood pressure could not be taken because he was in court. His blood pressure was taken on March 14, March 17, and March 20. Chatman testified that he asked Nurse Meng for blood pressure medicine at some point before March 21, 2011, but states that Nurse Meng and the other nurses told him they could not provide him with blood pressure medicine until he saw Dr. Miller. On March 21, 2011, Dr. Miller examined Chatman pursuant to the original protocol, at which point Dr. Miller diagnosed him with Stage II hypertension, and, *inter alia*, ordered that he be started on multiple medications for his hypertension, including Lysinapril, HCTZ, and Metformin.

On March 22, 2011, Chatman submitted a second Sick Call request, complaining that he was in need of blood pressure medicine. On the same day, Chatman submitted a grievance complaining that he had not received any blood pressure medication or insulin. (*See* Wilkes Aff, Ex. C.) Chatman complained as follows: "[I] have been locked up since the 7th of March, have not recived [sic] my medication. I'm on blood pressure medicine, Lysinapril, HtZ [sic] and norvasc, have not received any, nor has my insulin that I take from the Streets has yet Started. I feels [sic] like I had a mild Stroke from not receiving my medication I've put in several sick calls[.]" (*Id.*) CCS received the grievance on March 24, 2011. (*See* Wilkes Aff., Ex. D.) On

6

March 30, 2011, CCS found that the grievance was "unsustained," because Chatman had already been seen by Dr. Miller and the requested blood pressure medication had been ordered. (*Id.*) Notwithstanding the applicable grievance policy, Chatman did not file an appeal from this adverse decision.

In the meantime, on March 23, 2011 (the day after filing his grievance and second Sick Call request), Chatman refused to allow CCS's nursing staff to take his blood pressure. Later that day, Chatman complained of "right side weakness," at which point LPN Meng took his blood pressure, which was slightly elevated. Chatman was transported to the emergency room for the perceived "right side weakness."

## **ANALYSIS**

The defendants argue that Chatman's claims are barred because he failed to exhaust his administrative remedies before filing this lawsuit.

> Under the PLRA, a prisoner may not bring a federal action related to prison conditions "until such administrative procedures as are available are exhausted." 42 U.S.C. § 1997e(a). A grievant must undertake all steps of the [CJC] process for his grievance to be considered fully exhausted. A prisoner must adhere to any time limitations that are part of the institutional grievance policy.
>
> A prisoner's failure to exhaust his intra-prison remedies prior to filing suit is an affirmative defense under the PLRA. Inmates are not required to specially plead or demonstrate exhaustion in their complaints. Instead, the failure to exhaust must be established by the defendants.

*Surles v. Anderson*, 678 F.3d 452, 455 (6th Cir. 2012) (internal quotations, citations, brackets, and ellipsis omitted); *see also Jones v. Bock*, 549 U.S. 199, 199-200 (2007) (stating that there is "no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without

7

imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91, 93-94 (2006) (holding that PLRA requires "proper exhaustion"). "[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999); *see also Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (dismissing claims, where plaintiff filed federal complaint "before allowing the administrative process to be completed"); *Holley v. CCA Metro Davidson Cnty.*, 2013 WL 1984398, at *3-*4 (M.D. Tenn. May 13, 2013) (dismissal warranted, where plaintiff inmate had failed to file requisite administrative appeal of denial of initial grievance).

Despite CJS's administrative grievance policy, Chatman did not exhaust his intra-prison appeals process before filing this lawsuit. After he received an adverse determination with respect to his March 22, 2011 grievance complaining about not receiving blood pressure medication and proper treatment for his diabetes, Chatman did not appeal, even though the denial of his grievance was appealable. The deadline for Chatman to appeal that determination passed years ago. These undisputed facts, even when viewed in the light most favorable to Chatman, demonstrate that the defendants have carried their burden to show that Chatman failed to exhaust his administrative grievances before filing this lawsuit. Therefore, Chatman's lawsuit is barred by § 1997(e) of the PLRA and must be dismissed on that basis alone.

Because Chatman's claims are barred by the PLRA, the court need not address the defendants' alternative argument that Chatman's claims fail on the merits.

Therefore, for the reasons stated herein, the Motion for Summary Judgment filed by

8

defendants Crabtree and Meng (Docket No. 73) is **GRANTED**. Chatman's claims against these two defendants are hereby **DISMISSED**. Entry of this Memorandum & Order shall constitute judgment in the case as to these two defendants. The Clerk shall administratively close this case.[5]

It is so **ORDERED.**

Enter this 26th day of February 2014.

_____
ALETA A. TRAUGER
United States District Judge

---

[5]The only remaining defendant is Susan Howell. This case remains stayed as to her. (Docket No. 51.) Should the plaintiff have grounds to lift the stay, he should file a motion to reopen the case.